Carl M. FRANKLIN, William S. Hughes, Joseph R. Jones and Kenneth L. Traffetz, Trustees of Lincoln Mortgage Investors, a California Real Estate Investment Trust, Plaintiffs-Appellants,

v.

OKLAHOMA CITY ABSTRACT AND TITLE COMPANY, a corporation, Judd, Grayson, Cunningham & Assoc., Inc., a corporation, Successor in Interest to R. W. Thomas Surveying Company, a Corporation, Standard Title Insurance Company, a corporation, Leslie Judd, Jr., an Individual, Defendants-Appellees.

No. 76-2068.

United States Court of Appeals, Tenth Circuit.

Argued and Submitted March 14, 1978.

Decided Oct. 11, 1978.

Coleman Hayes, Oklahoma City, Okl., for plaintiffs-appellants.

Glen D. Huff, Oklahoma City, Okl. (with James D. Foliart, Oklahoma City, Okl., on brief) of Foliart, Mills & Niemeyer, Oklahoma City, Okl., for defendant-appellee Oklahoma City Abstract and Title Co.

Hugh A. Baysinger, Oklahoma City, Okl. (with John R. Couch and Gary W. Gardenhire, Oklahoma City, Okl., on brief) of Pierce, Couch, Hendrickson & Short, Oklahoma City, Okl., for defendants-appellees Judd, Grayson, Cunningham & Assoc., Inc. and Leslie Judd, Jr.

Barry D. Mock, Oklahoma City, Okl. (with Henry F. Featherly, Oklahoma City, Okl., on brief) of Lamun, Mock, Featherly, Baer & Timberlake, Oklahoma City, Okl., for appellee Standard Title Ins. Co.

Before HOLLOWAY, BARRETT and McKAY, Circuit Judges.

McKAY, Circuit Judge.

Plaintiffs are trustees of Lincoln Mortgage Investors (LMI), a California Real Estate Investment Trust. They brought this diversity suit against defendants Oklahoma City Abstract and Title Company (OCA), Judd, Grayson, Cunningham & Associates, a corporation, and Leslie Judd, Jr. (Surveyors), and Standard Title Insurance Company (Standard). Defendants separately moved to dismiss for failure to state a claim upon which relief can be granted. The trial court initially denied the motions, but when they were subsequently renewed the court treated them as motions for summary judgment and granted them. LMI now seeks a review of these final orders.

In early 1972, LMI agreed to make an interim construction loan of $700,000 to finance the construction of an apartment project in Oklahoma City. In return the borrower agreed to give LMI a first mortgage on the apartment complex to be constructed. Pursuant to this agreement, LMI engaged OCA to act as its closing agent. OCA was also commissioned to obtain a "loan survey" of the property and a title insurance policy guaranteeing to LMI a valid first mortgage on the construction project.

OCA employed the Surveyors to perform the "loan survey" and furnished them a legal description of the property in question.[1] In addition, OCA procured from Standard a policy of title insurance guaranteeing the priority of LMI's mortgage.

The closing instruments were prepared and filed and construction was begun. On March 30th, however, OCA learned there was a mistake in the legal description contained in the recorded mortgage. What should have been the "Southeast Quarter (SE ¼)" was inadvertently described as the "Southwest Quarter (SW ¼)." This same mistake was made in the typed portion of

---

1. Leslie Judd, Jr., an employee of R. W. Thomas Surveying Company (the predecessor of Judd, Grayson, Cunningham & Associates, Inc.)

the "loan survey" prepared by Surveyors.[2] Although the error was promptly corrected, numerous laborers and materialmen were able to file lien claims before the revised mortgage document was recorded. When the construction company subsequently defaulted on its loan, LMI instituted mortgage foreclosure proceedings in Oklahoma state courts. A priority battle of course ensued, with the intervening lienors asserting the superiority of their liens to LMI's mortgage.

At the request of LMI, Standard assumed the defense of LMI's mortgage. Standard succeeded in barring a number of the rival claims prior to trial of the foreclosure action, but there remained lien claims totaling $110,000 whose priority would have to be litigated. Although Standard's policy of title insurance afforded ample coverage for these remaining claims, Standard concluded that LMI's mortgage could be successfully defended and decided to proceed to trial. However, LMI was anxious to settle the remaining lien claims and called upon Standard to contribute to such settlement. Standard refused to do so. When Standard insisted upon litigating the priority of the remaining lien claims, LMI settled the claims for $55,000 over Standard's objections. LMI alleges that Standard's actions amounted to a denial of coverage under the title policy. Standard contends otherwise.

Demand for reimbursement was made by LMI upon OCA, Standard, and Surveyors, but all declined to comply. This suit followed. In it LMI sought recovery against each of the defendants for the amount paid to settle the lien claims. Each of the trial court's three summary judgment orders will be reviewed separately.

### Surveyors

LMI's complaint alleged that the erroneous legal description contained in its mortgage was attributable to the incorrect legal description included in the "loan survey" prepared by Surveyors. Surveyors responded by filing a motion to dismiss pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure. In a supporting memorandum, Surveyors contended that the "only purpose of a 'loan survey' is to verify from visible monuments that there are no encroachments onto the property surveyed from adjoining property, or that the property surveyed has no encroachments onto any adjoining property." Record, vol. 1, at 47. Surveyors filed two affidavits reinforcing this narrow definition of "loan survey" and argued for dismissal on the ground that LMI's claims were based on an incorrect legal description, not on a defective encroachment certificate. LMI did not file any counteraffidavits. The court overruled Surveyors' motion without prejudice to its subsequent presentation at pretrial conference.

Surveyors' later pretrial motion to dismiss was sustained by a court order dated December 2, 1975. LMI then moved for a rehearing, but the court denied this motion and entered a final judgment on December 22, 1975. In its order, the court for the first time treated Surveyors' motion to dismiss as a motion for summary judgment. Relying upon information contained in Surveyors' affidavits, the court granted judgment for Surveyors as a matter of law.

LMI now complains that the transformation of the 12(b)(6) motion into one for summary judgment was accomplished in a manner that deprived LMI of an opportunity to demonstrate the existence of a genuine issue of material fact. In evaluating this complaint, we must consider the interplay of Rule 12(b) and Rule 56 of the Federal Rules of Civil Procedure.

Rule 12(b) provides that if, on a motion to dismiss for failure to state a claim,

---

provided the requested "loan survey" based on the legal description furnished by OCA.

2. The survey document did contain a property diagram which was labeled with the correct legal description, and the proper description also was handwritten across the top of the document. Surveyors contend that the error in the typewritten portion of the "loan survey" was discovered and corrected the same day it was made, and that a corrected copy was forwarded to OCA. Brief for Appellee Surveyors at 4.

matters outside the pleading are presented to and not excluded by the court, the motion shall be treated as one for summary judgment and disposed of as provided in Rule 56, and all parties shall be given reasonable opportunity to present all material made pertinent to such a motion by Rule 56.

Rule 56(c) specifies that a motion for summary judgment "shall be served at least 10 days before the time fixed for the hearing." The rule also entitles the adverse party to serve opposing affidavits prior to the day of the hearing. Rule 56(e) provides that

[w]hen a motion for summary judgment is made and supported as provided in this rule, an adverse party may not rest upon the mere allegations or denials of his pleading, but his response, by affidavits or as otherwise provided in this rule, must set forth specific facts showing that there is a genuine issue for trial. If he does not so respond, summary judgment, if appropriate, shall be entered against him.

■■■ When matters outside the pleadings are presented and not excluded, the court must treat the motion as one for summary judgment and proceed under Rule 56. *Carter v. Stanton,* 405 U.S. 669, 671, 92 S.Ct. 1232, 31 L.Ed.2d 569 (1972) (per curiam); *American Home Assurance Co. v. Cessna Aircraft Co.,* 551 F.2d 804, 807 (10th Cir. 1977); *Torres v. First State Bank,* 550 F.2d 1255, 1257 (10th Cir. 1977). Furthermore, the provisions of Rule 56(c) for notice to the opposing party and an opportunity for him to file opposing affidavits are mandatory, and noncompliance with the rule deprives the court of authority to grant summary judgment. *Torres v. First State Bank,* 550 F.2d at 1257; *Adams v. Campbell County School Dist.,* 483 F.2d 1351, 1353 (10th Cir. 1973); *Mustang Fuel Corp. v. Youngstown Sheet & Tube Co.,* 480 F.2d 607, 608 (10th Cir. 1973). Simply stated, "[t]o consider a motion to dismiss as a motion for summary judgment without giving the adverse party an opportunity to present pertinent material is error." *Adams v. Campbell County School Dist.,* 483 F.2d at 1353.

Surveyors did not ask the court to treat its motion to dismiss as a motion for summary judgment. Likewise, there is no indication in the record that the court even advised LMI it would consider Surveyors' motion to dismiss, together with the supporting affidavits, as a motion for summary judgment. The suggestion is nonetheless raised that the presence of the affidavits on file for over six months constituted adequate notice to LMI. This argument was rejected by this court in *Adams,* where we ruled:

The fact that defense affidavits . . . had been on file for about six months is of no moment. Plaintiffs were confronted with a motion to dismiss for failure to state a claim. . . . The presence of the affidavits in the file was not notice to plaintiffs that the motion would be treated as one for summary judgment. Under Rule 12(b) the court could have excluded the affidavits from consideration.

*Id.* at 1353. Thus, the requirement of Rule 12(b) that "all parties shall be given *reasonable opportunity* to present all material made pertinent to such a motion by Rule 56" (emphasis added) was not met. The term "reasonable opportunity" includes " 'some indication by the court . . . that it is treating the 12(b)(6) motion as a motion for summary judgment,' with the consequent right in the opposing party to file counter affidavits or to pursue reasonable discovery." *Plante v. Shivar,* 540 F.2d 1233, 1235 (4th Cir. 1976) (per curiam); *Johnson v. RAC Corp.,* 491 F.2d 510, 513 (4th Cir. 1974); *Dale v. Hahn,* 440 F.2d 633, 638 (2d Cir. 1971).

■■ The failure of the trial court to give LMI notice that it would consider the affidavits and render a summary judgment "deprived plaintiffs of an adequate opportunity to be heard and denied them the right to present controverting material and the right to amend. In so acting the trial court violated both the spirit and the mandates of the applicable rules. The grant of summary judgment was improper." *Adams v. Campbell County School Dist.,* 483 F.2d

at 1353. The order granting Surveyors' motion for summary judgment must therefore be set aside.

### Standard

LMI's complaint alleged that Standard denied liability under the title policy and refused to cooperate with LMI in settling competing lien claims. After filing an answer to LMI's complaint, Standard moved for dismissal under Rule 12(b)(6). This motion was overruled without prejudice to raise it again in later pretrial proceedings. Standard's subsequent motion for summary judgment was granted by the court.

A consideration of the propriety of the court's judgment requires us to examine the terms of the title policy issued to LMI by Standard. Relevant sections of the policy provide that:

(c) The Company shall have the right at its own cost to institute and without undue delay prosecute any action or proceeding or to do any other act which in its opinion may be necessary or desirable to establish the title to the estate or interest or the lien of the insured mortgage, as insured, and the Company may take any appropriate action under the terms of this policy, whether or not it shall be liable thereunder, and shall not thereby concede liability or waive any provision of this policy.

(d) Whenever the Company shall have brought any action or interposed a defense as required or permitted by the provisions of this policy, the Company may pursue any such litigation to final determination by a court of competent jurisdiction and expressly reserves the right, in its sole discretion, to appeal from any adverse judgment or order.

(e) In all cases where this policy permits or requires the Company to prosecute or provide for the defense of any action or proceeding, the insured hereunder shall secure to the Company the right to so prosecute or provide defense in such action or proceeding, and all appeals therein . . . . Whenever requested by the Company, such insured shall give the Company all reasonable aid in any such action or proceeding, in effecting settlement, securing evidence, obtaining witnesses, or prosecuting or defending such action or proceeding, and the Company shall reimburse such insured for any expense so incurred.

Record, vol. 1, at 8, 10. Standard contends that at all times it has acted within the scope of the above quoted provisions of its policy. In addition, Standard argues it has no liability for indemnification to LMI under the following provision of its policy:

No claim shall arise or be maintainable under this policy . . . (b) in the event of litigation until there has been a final determination by a court of competent jurisdiction, and disposition of all appeals therefrom, adverse to the title or to the lien of the insured mortgage . . . or (c) *for liability voluntarily assumed by an insured in settling any claim or suit without prior written consent of the Company.*

Record, vol. 1, at 10 (emphasis added).

We considered a similar dispute in *Traders & General Ins. Co. v. Rudco Oil & Gas Co.,* 129 F.2d 621 (10th Cir. 1942). We observed in that case that the right of an insurer "to control the litigation in all of its aspects carries with it the correlative duty to exercise diligence, intelligence, good faith, honest and conscientious fidelity to the common interest of the parties." *Id.* at 627. Furthermore, provisions prohibiting out-of-court settlements between an insured and a claimant without the consent of the insurer are not enforced when the insurer repudiates coverage or denies liability. *Simon v. Maryland Cas. Co.,* 353 F.2d 608, 612 (5th Cir. 1965); *Bunge Corp. v. London & Overseas Ins. Co.,* 394 F.2d 496, 497 (2d Cir.), *cert. denied,* 393 U.S. 952, 89 S.Ct. 376, 21 L.Ed.2d 363 (1968). In these cases the critical questions are factual: whether the insurer has denied liability or has failed to exercise diligence, good faith, and conscientious fidelity in safeguarding the interests of the insured. The same fact questions are raised by the pleadings in this case.

We are asked not to decide the merits of this dispute but only to rule on whether summary judgment was an appropriate means of disposing of the controversy. Rule 56 allows summary disposition of claims "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." In applying this standard all reasonable doubts as to the existence of a material fact must be resolved against the moving party.

■ Here there were no depositions, answers to interrogatories, admissions or affidavits relating to the conduct of Standard and LMI as parties to the title insurance policy. The only basis on which the summary judgment motion could have been issued consisted of the pleadings of the parties. Since LMI alleged that Standard denied liability under the policy and failed to exercise diligence and good faith—which allegations Standard denied in its answer—there were questions of fact directly in issue from the pleadings. Thus, the order entering summary judgment for Standard was inappropriate and is accordingly set aside.

### OCA

LMI's allegations against OCA were based on OCA's inclusion of an erroneous legal description in the mortgage it prepared for LMI. After the court had rendered summary judgment for Surveyors, OCA filed its own summary judgment motion, contending that the two-year statute of limitations applicable to negligence actions barred LMI's claim. LMI countered with the contention that its action depended on the contract employing OCA to act as its closing agent and that the applicable limitation statute had a five-year period. The clerk's minutes indicate that the motion was overruled, but an order sustaining the motion was mistakenly entered. The court later recognized its error and set aside the earlier judgment as improvidently filed.

OCA again moved for summary judgment relying upon the pleadings, discovery records, and the prior rulings of the court with respect to Surveyors and Standard. In particular, OCA argued that the evidence of record showed that LMI had "suffered no damages as a result of the alleged breach of contract" and that "all damages sustained by [LMI] came as a direct result of [LMI's] own voluntary actions." The court granted judgment for OCA.

It is apparent that the court's judgment was grounded on its earlier determination that LMI's losses resulted from its own wrongful settlement of the lien claims in contravention of the title policy issued by Standard. OCA's brief in support of its summary judgment motion stated:

> This Court has already ruled, in sustaining Standard's motion for summary judgment, that plaintiffs wrongfully breached the conditions of its [sic] insurance policy with Standard by voluntarily undertaking to settle with the lien claimants.
>
> . . .
>
> It necessarily follows, as a matter of law that plaintiffs' damages were entirely sustained by their own voluntary act of breaching their title insurance policy with Standard. That being the case, plaintiffs are not entitled to maintain that their damages resulted from or were in any way related to, the alleged breach of an oral contract by defendant OCA. Accordingly, defendant OCA renews its request for summary judgment.

Record, vol. 1, at 147.

■■ OCA's attempt to ride the coattails of Standard's summary judgment order cannot succeed. Our setting aside of the summary judgment in favor of Standard effectively pulls the rug from beneath OCA's position. Beyond this, LMI's cause of action against OCA based on an agency contract is entirely different from its claim against Standard based on the title insurance contract. Regardless of Standard's liability to insure against claims having priority over LMI's mortgage, the question of whether LMI's damages were caused by OCA's alleged breach of contract in prepar-

ing the mortgage with an incorrect legal description is one of fact to be decided on the evidence.

The order of summary judgment in favor of OCA, like those in favor of Surveyors and Standard, is therefore set aside. The case is remanded to the district court.